Evelyn V. Keyes, Justice, dissenting.
This is an important tax case of first impression regarding the ability of a local *87 county taxing authority to levy ad valorem taxes on inventory in a federally authorized Foreign Trade Zone ("FTZ"). The majority ignores the governing law set out in the Code of Federal Regulations ("CFR") and the Foreign-Trade Zone Manual ("FTZ Manual"),[1] the contract governing the operation of the FTZ, and all of the evidence indicating that the correct regulations were followed and the correct taxes were assessed at the relevant times. Instead, the majority reverses the judgment of the district court and the order of appellee Harris County Appraisal District's ("HCAD's") own county taxing authority, holding that the inventory in the relevant zone -Port of Houston Subzone 84-N-was admitted to an active zone and thus was exempt from the assessment of county ad valorem taxes for the relevant tax years (2011-2013).
The federal Foreign Trade Zones Act, as embodied in the federal CFRs and the federal FTZ Manual, sets out the scheme by which FTZs are governed. Essentially, the Foreign-Trade Zones Board ("FTZ Board") has authority to designate FTZs and subzones, which are special-purpose zones established within existing zones. The zones are supervised by Customs and Border Protection ("CBP"). The FTZ Board first approves a grant to a grantee to establish, operate, and maintain a zone, and CBP then approves the activation of the zone to allow merchandise to be admitted to the zone. At that point, an operator-defined as a corporation, partnership, or person that operates a zone or subzone under the terms of an agreement with the zone grantee-or the grantee may operate the zone by, among other acts or responsibilities, admitting, transferring, and removing merchandise from the zone. See 19 C.F.R. § 146.1(b) ; index="53" url="https://cite.case.law/citations/?q=19%20C.F.R.%20%C2%A7%20146.1">id. § 146.4.
Relevant here, the Foreign-Trade Zones Act provides that goods held in an active FTZ for export out of the United States are exempt from state and local ad valorem taxation. See 19 U.S.C. § 81o(e) ; see also TEX. TAX CODE ANN. § 11.12 (West 2016) (providing that property exempt from ad valorem taxation by federal law is exempt from taxation).
In the present case, appellee PRSI Trading, LLC, acting through predecessor entities, served as the operator of a subzone, Subzone 84-N. On January 21, 2005, PRSI Trading's predecessor, Pasadena Refining System, Inc. DE ("PRSI(DE)") entered into an agreement with the Port of Houston Authority (the grantee of Zone No. 84), to serve as the operator of the already-activated Subzone 84-N ("the 2005 Grantee/Subzone-Operator Agreement"). HCAD recognized PRSI's entitlement to the exemption from ad valorem taxation.
Following a series of mergers, another PRSI entity, Pasadena Refining System, Inc. CT ("PRSI(CT)") applied to become the operator of Subzone 84-N in place of PRSI(DE). A dispute arose among the various parties involved-including CBP, the Port of Houston Authority, and PRSI(CT)-regarding PRSI(CT)'s status as operator of the subzone. While that dispute was being resolved through various administrative processes, Subzone 84-N remained active and PRSI(CT) continued to operate it pursuant to the 2005 Grantee/Subzone-Operator Agreement and temporary authorizations granted by CBP to PRSI(CT) to continue acting as operator while the dispute was pending. Consequently, *88 HCAD continued to recognize that imported crude oil owned by PRSI(CT), held in the activated and operational FTZ, qualified for the FTZ tax exemption.
The dispute over PRSI(CT)'s status as operator was ultimately resolved in April 2013, when CBP made its final determination that PRSI(CT) must resubmit an application if it wished to serve as the operator of Subzone 84-N. Following this determination, the Port of Houston declined to approve PRSI(CT) as subzone operator, and it requested deactivation of Subzone 84-N. On August 23, 2013, CBP formally deactivated Subzone 84-N.
Appellant Harris County then challenged HCAD's recognition of PRSI(CT)'s ad valorem tax exemption for the tax years 2011, 2012, and 2013. HCAD's Appraisal Review Board denied Harris County's challenge, and Harris County sought review of the Board's decision in the trial court.[2] The trial court likewise denied Harris County's challenge, upholding the exemption granted to PRSI(CT) for each of these years under authority of the CFRs, the FTZ Manual, and the 2005 Grantee/Subzone-Operator Agreement and recognized by HCAD.
The majority in this case on appeal, however, misapplies and misconstrues the CFRs and the FTZ Manual and ignores the operative 2005 Grantee/Subzone-Operator Agreement between the Port of Houston Authority and PRSI and the determinations of CBP granting PRSI(CT) temporary authorizations to continue as operator of the subzone throughout the pendency of the dispute. The majority now decides to grant Harris County's challenge to HCAD's failure to collect ad valorem taxes on the inventory in Subzone 84-N from the years in which PRSI(CT) operated the subzone pursuant to temporary authorization from CBP and the 2005 Grantee/Subzone-Operator Agreement with the Port of Houston Authority while its status as operator was in dispute.
I respectfully dissent. I believe the majority misunderstands the law has it exactly backwards. It does not properly account for the fact that, during the entirety of the relevant time, PRSI(CT) was seeking approval of a change of operator, its application was under review by CBP, and the application had not been either granted or finally denied by ruling of CBP. HCAD never challenged the exemption from ad valorem taxation of the inventory admitted to Subzone 84-N granted by CBP for any of the years at issue in this litigation (2011-2013), and, when Harris County subsequently challenged the exemptions for those years, HCAD's Appraisal Review Board agreed with HCAD-the county taxing authority-and with its co-defendant, PRSI Trading, LLC-not with Harris County. The trial court also upheld the Appraisal Review Board's ruling when Harris County brought this suit for judicial review of that administrative ruling. Harris County now appeals the trial court's ruling, contending that the trial court erred in denying its motion for summary judgment and granting PRSI's and HCAD's cross-motions for summary judgment because PRSI's inventory was not exempt from ad valorem taxation by Harris County for the years 2011-2013 under applicable federal law.
I strongly disagree with the majority's holding reversing and rendering judgment in favor of Harris County. I believe that the majority's opinion establishes legally incorrect and unsustainable precedent in this Court construing federal law-the FTZ Act-as permitting the taxation by a *89 county of merchandise in a FTZ during the period in which a change of operator is pending and when successive extensions have been granted by CBP to the operator to continue to operate the Subzone in the interim. I would affirm the order of the trial court granting PRSI's and HCAD's motion for summary judgment and upholding the exemption.
Background
Subzone 84-N was created and activated in 1995. It covers a refinery located in Pasadena, Texas that was owned in 1995 by the original operator of Subzone 84-N, Crown Central Petroleum Corporation. Crown sold the refinery to PRSI(DE) in 2004. At the time it purchased the refinery, PRSI(DE) was a wholly-owned subsidiary of Astra Refining System, Inc., which was a wholly-owned subsidiary of Astra Holding USA. Astra Holding USA, Inc., in turn, was a wholly-owned subsidiary of Astra Oil Trading NV.
On January 21, 2005, PRSI(DE) entered into the 2005 Grantee/Subzone-Operator Agreement to operate Subzone 84-N for the manufacturing, blending, and storage of petrochemicals and other related products at the refinery. The Grantee/Subzone-Operator Agreement imposed a number of duties on PRSI(DE) as subzone operator and, subsequently, on PRSI(CT) as the temporary authorized interim subzone operator. PRSI(DE) agreed, inter alia, to use the activated subzone only "for the manufacture, blending, and storage of petrochemicals and other related products"; to pay the Port of Houston Authority, as grantee, an annual nonrefundable fee under terms prescribed by the FTZ Board; "to comply with all U.S. Customs rules and regulations governing foreign trade zones as well as all applicable Port of Houston Authority tariffs"; to "maintain accurate inventory record and adequate security for zone merchandise in accordance with all U.S. Customs rules and regulations"; and to "submit to the grantee written monthly activity reports" and all information required for the Port of Houston's annual report to the FTZ Board.
Importantly, the 2005 Grantee/Subzone-Operator Agreement provided:
This agreement shall remain in effect until one of the following occurs: (1) an alternate agreement becomes effective, (2) the subzone operator relinquishes control of the zone authorized property, (3) the Port of Houston Authority is replaced as grantee of U.S. FTZ No. 84, (4) zone status of the subzone operator is terminated by the Foreign Trade Zone Board.
It also provided:
The subzone operator will be responsible for all activity occurring within the zone area authorized on its behalf by the Foreign Trade Zones Board as it is described in its subzone application. [PRSI(DE) ] shall continue as subzone operator until its authorized zone status is terminated by the Foreign Trade Zones Board or for any reason it is no longer in control of the authorized area.
(Emphasis added).
On February 4, 2005, PRSI(DE) requested that CBP approve it as a new operator of Subzone 84-N, subject to the concurrence of the grantee, the Port of Houston Authority. The Port of Houston Authority concurred with PRSI(DE)'s request and, on February 20, 2005, CBP activated Subzone 84-N with PRSI(DE) as the new operator.
In 2006, a series of mergers occurred giving rise to the facts underlying this dispute. On August 29, 2006, documents were filed with the Delaware Secretary of State indicating that PRSI(DE) was that day merged into Astra Refining System, *90 Inc., which, in turn, was merged with and into Astra Holding, USA, Inc., a Connecticut corporation, and that Astra Holding USA, Inc.'s name was changed to PRSI(CT).
On September 1, 2006, PRSI(CT) submitted an application to CBP asking that it approve the "change in FTZ operator" for Subzone 84-N from PRSI(DE) to PRSI(CT).
In a letter dated February 15, 2008, CBP advised PRSI(CT) that, pursuant to 19 C.F.R. § 146.6, PRSI(CT) needed to obtain a letter of concurrence from the Port of Houston for approval to be granted. The Port of Houston refused to grant the concurrence and CBP, therefore, did not approve the application.
On April 7, 2008, PRSI(CT) filed a statement with the CBP changing its position and asserting that it was not a new operator of Subzone 84-N and that it did not require an activation. This statement presented the issue: "Whether changes to the corporate structure of the operator of Subzone 84-N require the operator to apply for zone activation and obtain a letter of concurrence from the Houston Authority, pursuant to 19 C.F.R. § 146.6(b)(5)."
On September 21, 2009, CBP issued a letter ruling in which it held:
[PRSI(DE) ], the operator of Subzone 84-N, ceased to exist on August 29, 2006, and [PRSI(CT) ] is a new entity for purposes of determining whether it is a new Zone operator. Therefore, in [PRSI(CT)'s] application for approval of what must be an activation, [PRSI(CT) ] must provide a letter of concurrence from [the Port of] Houston Authority, the zone grantee, before CBP will approve the activation.
See 19 C.F.R. § 146.7(e) ("A grantee of an activated zone site shall make written application to the port director for approval of a new operator[.]"); 19 C.F.R. § 146.1(b) (defining "reactivation" as "a resumption of the activated status of an entire area that was previously deactivated without any change in the operator" and providing that "[i]f the operator is different, [the action] is an activation"); FTZ MANUAL , section 4.13(a) (providing that if corporate operator undergoes "change result[ing] in a new corporate entity, a new application for activation shall be made under the procedures in 19 C.F.R. § 146.6 and section 4.12 [FTZ Manual].").
The dispute over the status of PRSI(CT) continued, and PRSI(CT) pursued administrative review of CBP's September 21, 2009 ruling. Throughout the period of time during which the uncertainty over the status of PRSI(CT) as operator existed-between April 18, 2008, and March 27, 2013-PRSI(CT) requested, and CBP granted to PRSI(CT), month-to-month extensions of time to operate Subzone 84-N. PRSI(CT) continued to operate the subzone, which remained active, pursuant to the 2005 Grantee/Subzone-Operator Agreement. Neither PRSI(CT) nor the Port of Houston Authority requested formal deactivation of the subzone, and none of the actions necessary to deactivate a subzone occurred during the time PRSI(CT)'s administrative review of CBP's ruling remained pending. In each of its renditions to HCAD during this time, PRSI(CT) claimed exemption from ad valorem taxation of the inventory within Subzone 84-N, including taxes assessed by Harris County. And HCAD continued to grant the FTZ exemptions to PRSI(CT) each year.
On April 12, 2013, PRSI(CT)'s administrative review process ended when CBP issued a final ruling, reaffirming its holding:
The CBP Regulations and the [FTZ Manual] require that new FTZ operators *91 be approved prior to operating a zone.... [S]ince [PRSI(DE) ] ceased to exist, CBP's approval to operate the FTZ also ceased. [PRSI(CT),] therefore, must be a new operator. This new operator must apply for approval to operate the FTZ.
On May 6, 2013, the Port of Houston Authority notified CBP that it declined to approve of PRSI(CT) as the new subzone operator, and it requested deactivation of Subzone 84-N. On August 23, 2013, CBP formally deactivated Subzone 84-N. Its inventory was removed, and HCAD accordingly ceased to recognize the FTZ exemptions.
Harris County, however, took a different position from CBP, the Port of Houston, and HCAD. On May 30, 2013-before Subzone 84-N had been formally deactivated-Harris County filed a petition with the HCAD's Appraisal Review Board challenging HCAD's grant of FTZ exemptions to PRSI and seeking back-appraisal for HCAD accounts numbered 1041489, 1044919, 2010581, and 2010582, for tax years 2011 to 2013. On September 16, 2013, HCAD's Appraisal Review Board denied Harris County's challenge. Harris County then sought judicial review from HCAD's Appraisal Review Board's order. The district court affirmed the order. The majority reverses that decision and renders judgment in Harris County's favor. I would affirm the judgment of the trial court.
Discussion
Harris County argues that there has been no authorized operator of Subzone 84-N since 2006 and that, without an authorized operator, no goods could have been properly admitted into the subzone pursuant to applicable federal regulations. Thus, it argues, PRSI was not entitled to the FTZ exemption and HCAD's Appraisal Review Board and the trial court improperly granted summary judgment in favor of PRSI(CT) and HCAD. The majority agrees; I do not. The terms of the federal Foreign Trade Zones Act, its attendant regulations contained in the CFRs and the FTZ Manual, the operative 2005 Grantee/Subzone-Operator Agreement between the Port of Houston Authority and PRSI, the ongoing extensions granted by the federal agency in control of the FTZ, the CBP, and the conduct of the parties all undermine Harris County's argument and the majority's conclusions.
A. Exemption of Merchandise in an FTZ from Ad Valorem Taxation
The FTZ exemption rule provides that "[t]angible personal property" which is "held in a zone" for certain enumerated purposes "shall be exempt from State and local ad valorem taxation." 19 U.S.C. § 81o(e). Likewise, under CFR section 400.1(c), governing the use and operation of FTZs, "Foreign merchandise (tangible personal property) admitted to a zone and domestic merchandise held in a zone for exportation are exempt from certain state and local ad valorem taxes.... Articles admitted into zones for purposes not specified in the Act shall be subject to the tariff laws and regular entry procedures, including the payment of applicable duties, taxes, and fees." 15 C.F.R. § 400.1(c).
" 'Admit' means to bring merchandise into a zone with zone status." 19 C.F.R. § 146.1(b) (providing that "zone status" means "the status of the merchandise admitted to a zone, i.e., nonprivileged foreign, privileged foreign, zone restricted, or domestic"). Merchandise may only be admitted into a zone or subzone that has been "activated." Id. In turn, " '[a]ctivation'
*92 means approval by the grantee[3] and port director[4] for operations[5] and for the admission and handling of merchandise in zone status." Id. The CFRs further provide, "Upon the Port Director's approval of an application for activation and acceptance of an executed bond, the zone or zone site will be considered activated; and merchandise may be admitted to the zone." See ion index="63" url="https://cite.case.law/citations/?q=19%20C.F.R.%20%C2%A7%20146.1">id. § 146.6(e). Only after the approval of activation do users of the zone or zone site gain the benefits conferred under the FTZ Act. See FTZ MANUAL , section 4.1.
Here, it is undisputed that Subzone 84-N was activated on February 20, 2005, with PRSI(DE) as the operator. It is also undisputed that, on August 29, 2006, PRSI(DE) merged with Astra Refining System, Inc., which, in turn, merged with Astra Holding, USA, and that Astra Holding, USA's name was changed to PRSI(CT). On September 1, 2006, PRSI(CT) filed a request with CBP for approval of the "change in FTZ operator" for Subzone 84-N from PRSI(DE) to PRSI(CT). PRSI(CT) later changed its mind, and, on April 7, 2008, it filed a statement explaining that it was not a new operator and did not require an activation. By an opinion letter issued September 21, 2009, the CBP opined that "the operator at the time of the 2005 activation of Subzone 84-N, [PRSI(DE) ], ceased to exist on August 29, 2006," and it ruled that PRSI(CT) must obtain the concurrence of the zone grantee (the Port of Houston) and CBP approval of a new activation.
All of this is undisputed. What is disputed is whether Subzone 84-N was deactivated on August 29, 2006, when PRSI(DE) ceased to exist. The question is whether Subzone 84-N, which had been activated on February 20, 2005, with PRSI(DE) as operator, was left without an approved operator and thus was operated by PRSI(CT) without authorization. This alleged unauthorized operation would subject all of the inventory in Subzone 84-N to local ad valorem taxation by HCAD from August 2006 until 2013, when CBP made its final ruling and Subzone 84-N was formally deactivated.
The majority holds that the operation of Subzone 84-N from August 29, 2006, to April 13, 2013, was unauthorized and illegal and therefore the inventory in the subzone during that period was subject to ad valorem taxation by HCAD. I find the majority's construction of the law and the governing documents to be directly contrary to the plain language of the law and the evidence.
B. Was Subzone 84-N Activated During the Tax Years in Question?
At this point in the litigation, no party disputes the determination of CBP that when a change in operator occurs the grantee or purported new operator of the zone or subzone must file a new application for activation. In its September 21, 2009 letter, CBP stated:
A foreign trade zone or subzone ... has an activated status, or has had its "activation" approved, if the zone grantee *93 and the CBP port director approve the operation of the zone.... If the operator of a zone is about to be changed, then there must be an application for approval of activation of the zone.... When a zone is operated by a corporation, and a change in the operator corporation "results in a new corporate entity, a new application for activation shall be made " pursuant to C.F.R. § 146.6.
(Emphasis added). CBP further opined that PRSI(CT) was "a new entity for purposes of determining whether it is a new zone operator," that it must, therefore, apply for approval of activation as the new operator, and that PRSI(CT) "must provide a letter of concurrence from the [Port of] Houston Authority, the zone grantee, before CBP will approve the activation"-approval that never came.
The majority takes this initial opinion by CBP to be the end of the story and immediately concludes that Subzone 84-N was deactivated and that subsequent operation of the subzone was without authorization and illegal, and, therefore, ad valorem taxes were payable on the inventory stored in the subzone. All of this reasoning is contradicted by the governing law and documents and is incorrect.
Nothing in CBP's September 21, 2009 letter purports to deactivate Subzone 84-N. Instead, following the issuance of this letter, PRSI(CT) pursued administrative review of the September 21, 2009 determination up until April 2013. During that time, it is undisputed that CBP repeatedly granted PRSI(CT) temporary authorizations to serve as the operator of Subzone 84-N in accordance with the express provisions of the CFR, the FTZ Manual, and the 2005 Grantee/Subzone-Operator Agreement between the Port of Houston Authority and PRSI(DE). Although it could have sought formal deactivation at any time,[6] the grantee, the Port of Houston Authority, continued to recognize PRSI(CT) as the subzone's operator, and it continued to abide by the terms of the 2005 Grantee/Subzone-Operator Agreement up until April 2013, when CBP issued its final ruling confirming that PRSI(CT) was a new operator and was required to apply for approval to operate Subzone 84-N.
During all of that time, Subzone 84-N was never deactivated in accordance with controlling regulations. On the contrary, the relevant provisions of the FTZ Manual-which serves to collect in a single document all of the laws, regulations, and policies relevant to the daily operations of FTZs-contemplate the continued activation and operation of a zone or subzone when there is a change in operator and approval of the new operator's application to operate the zone is pending. And that is exactly what happened here.
With respect to a "New Zone Operator," the FTZ Manual provides:
It is permissible to change Operators. In the existing zone operation, the Grantee sponsor should be careful not to terminate contractual relationships until the Port Director has approved a new Operator, background investigations have been completed, and an Operator's bond has been accepted and is in force for an agreed amount. A contract between the Grantee and Operator should govern the relationship between the parties. A Grantee of an activated zone site shall make written application to the Port Director for approval of a new Operator, submitting with the application a certification by the new Operator that the *94 inventory control and recordkeeping system meets the requirements of 19 CFR 146 Subpart B and a copy of the procedures manual if different from the previous Operator's manual.... The bond specified in 19 CFR 146.6(d) shall be submitted by the Operator before the operating agreement may become effective in respect to merchandise in zone status. The Port Director shall promptly notify the Grantee, in writing, of the approval or disapproval of the application (19 CFR 146.79(e), (f))[.]
FTZ MANUAL , section 4.12.
The FTZ Manual also provides for the "Interim Responsibility of Existing Operator" pending approval of a new Operator and for execution of a new bond when a change of Operators is sought:
The existing Operator remains responsible for merchandise in zone status and for compliance with the laws and regulations, under its Operator's bond until the new Operator is approved and a new bond is executed. The existing Operator is relieved of responsibility in the interim only if the zone is deactivated or activated status is suspended, and all merchandise in zone status (except domestic status merchandise for which no permit is required) has been removed from the zone or entered for consumption.
Id. at § 4.12(a).
Under these regulations, PRSI(CT) as the acting operator remained responsible for merchandise in Subzone 84-N until a new operator could be approved, and the grantee, the Port of Houston Authority-following the dictates in section 4.12-was "careful not to terminate contractual relationships until the Port Director ... approved a new Operator." Thus, the 2005 Grantee/Subzone-Operator Agreement continued to govern the relationship between the parties until the issue of whether approval of a new operator was required was finally resolved in the affirmative and a new operator of Subzone 84-N was approved. No deactivation or suspension of activation was initiated and no removal of all merchandise in zone status occurred to relieve PRSI(CT) of its responsibilities as operator until August 2013.
The CFRs define "deactivation" as the "voluntary discontinuation of the activation of an entire zone or subzone by the grantee or operator." 19 C.F.R. § 146.1(b). And the CFRs set out the process by which a zone or subzone may be deactivated. Title 19, section 146.7 of the CFRs requires the "grantee [the Port of Houston] or an operator [PRSI(CT) ] with the concurrence of [the] grantee, shall make written application to the port director for deactivation of zone site." See index="66" url="https://cite.case.law/citations/?q=19%20C.F.R.%20%C2%A7%20146.1">id. § 146.7(b). When deactivation is formally sought, the CFR provides, "The port director shall not approve the application unless all merchandise in the site in zone status (other than domestic status) has been removed at the risk and expense of the operator." Id. The zone then "may be reactivated using the above procedure if a sufficient bond is on file under § 146.6(d)." Id.
Contrary to the majority's assumption that deactivation of Subzone 84-N occurred in 2006, none of the steps required for deactivation of Subzone 84-N were undertaken in this case prior to April 12, 2013. For this to have happened, under 19 CFR, section 146.7, PRSI(CT) would have had to initiate the process of deactivation and it would have had to remove the merchandise "in zone status"-i.e., PRSI(CT)'s stored crude oil benefitting from the exemption from ad valorem taxes for merchandise held in an FTZ-at its own expense. That would have terminated its responsibility to continue to operate the subzone under the 2005 Grantee/Subzone-Operator Agreement *95 with the Port of Houston Authority. But it would also have left nothing for HCAD to tax as unlawfully held in Subzone 84-N, as no inventory subject to ad valorem taxation would have remained in the subzone.
Not only did deactivation not happen, but the record conclusively manifests what did happen-namely, PRSI(CT)'s authorized, continued operation of Subzone 84-N pursuant to letters of temporary authorization from CBP for the entire time between the date on which CBP ruled that PRSI(DE) ceased to exist (August 29, 2006) until the steps required by 19 CFR 146.7 were completed in 2013. In the interim, PRSI(CT) continued to operate Subzone 84-N in full compliance with federal law and regulations, the FTZ Manual, the 2005 Grantee/Subzone-Operator Agreement for Subzone 84-N, and extensions granted by CBP, the agency in control of the FTZ.
Thus, all of the requirements set out in the CFRs and the FTZ Manual were complied with, not only in accordance with the referenced federal regulations and the FTZ Manual, but also in accordance with the "contract between the Grantee and Operator," the 2005 Grantee/Subzone-Operator Agreement, which section 4.12 of the FTZ Manual instructs "should govern the relationship between the parties" when a change of operator is sought "until the Port Director has approved a new Operator, background investigations have been completed, and an Operator's bond has been accepted and is in force for an agreed amount." FTZ MANUAL , section § 4.12.
The Grantee/Subzone-Operator Agreement entered into on January 21, 2005, between the Port of Houston Authority as the "grantee" and PRSI(DE) as the "subzone operator" was clear on PRSI(DE)'s obligations. First, it provided, in relevant part, that PRSI(DE) was "responsible for all activity occurring with the zone area" and that it "shall continue as subzone operator until its authorized zone status is terminated by the FTZ Board or for any reason it is no longer in control of the authorized area." Second, it provided that the agreement was to remain in effect until, among other events, "an alternate agreement become effective," PRSI(DE) "relinquish[ed] control of the zone authorized property," or the "zone status of the subzone operator is terminated by the" FTZ Board.
The final determination as to the post-merger status of PRSI(CT) did not occur until April 12, 2013. Up until that time, the Port of Houston Authority continued to abide by the terms of the 2005 Grantee/Subzone-Operator Agreement and CBP granted PRSI(CT) temporary authorizations to operate Subzone 84-N. On May 6, 2013, the Port Authority notified CBP that it declined to seek approval of PRSI(CT) as a new operator of Subzone 84-N, and on May 8, 2013, CBP notified PRSI(CT). On August 23, 2013, CBP formally deactivated Subzone 84-N pursuant to 19 CFR 146.7. The record reflects that all provisions of the 2005 Grantee/Subzone-Operator Agreement were complied with and that the Agreement was not terminated until the subzone was deactivated.
The affidavit of Jon Mattson, the FTZ Administrator for PRSI(CT), is instructive. It attests, inter alia:
14. Between September 2006 and April 12, 2013, PRSI(CT)'s status as a new operator was the subject of administrative review at [CBP]. The issue being considered by [CBP] was whether PRSI(CT) was in fact a new operator that required [CBP's] approval. That issue was not administratively resolved until April 12, 2013.
15. During this administrative review period, which is also the period at issue *96 in the lawsuit, [CBP] recognized, on a temporary basis, PRSI(CT) as the operator of 84-N, treated that subzone as activated, and approved the admission of foreign sourced crude oil into 84-N, meaning that crude oil was not subject to federal duties, tariffs or taxes until it or products produced from that crude oil left the zone.
16. Attached as Exhibit 7 are true and correct copies of letters I received from [CBP] from April 18, 2000 until March 27, 2013, in which [CBP] granted PRSI(CT) approval to operate 84-N on a temporary basis.
17. Attached as Exhibit 8 are true and correct copies of forms (214 and 216) filed with [CBP] that authorized foreign sourced crude oil to be admitted to 84-N between January 1, 2006 and August 23, 2103[.]
The actions described in Mattson's affidavit and set out in its attached exhibits were in strict compliance with the provisions of the 2005 Grantor/Subzone Operator Agreement set forth above. These actions were also in strict compliance with the provisions for changing a zone operator set out in the federal laws and regulations and summarized in the FTZ Manual at Section 4.12 (New Zone Operator) and Section 4.12(a) (Interim Responsibility of Existing Operator)-provisions likewise set forth above.
Because all federal regulations and all applicable instruments were complied with at all times during the administrative review period from September 2006 through April 12, 2013-the period for which Harris County claims HCAD erroneously recognized PRSI(CT)'s exemption from ad valorem taxes on the merchandise in Subzone 84-N-the subzone remained activated and was operated by PRSI(CT) with appropriate authorization during that entire time. Accordingly, the "[t]angible personal property" that was "held in a zone"-subzone 84-N-for the enumerated purpose was properly "exempt from State and local ad valorem taxation." See 19 U.S.C. § 81o(e) ; TEX. TAX CODE ANN . § 11.12. I would hold, therefore, that HCAD's recognition of PRSI(CT)'s exemption was proper, and I would affirm the determinations of both HCAD's Appraisal Review Board and the trial court. The majority does not.
The majority, however, places great weight on the affidavit of Shane M. Williams, the FTZ Administrator for the Port of Houston. In paragraph nine of his affidavit, Williams states, "On February 8, 2010, the Port Authority acknowledged to CBP the deactivation of subzone 84-N, in the absence of an authorized subzone operator, and confirmed that it continued to decline to concur with [PRSI(CT)'s] activation request." What the majority fails to note is that Williams's statement is simply acknowledging the initial ruling of CBP during negotiations over the future of Subzone 84-N that continued from 2006 until CBP entered its final ruling, on April 12, 2013, that PRSI(CT) must apply as a new operator. Thus, Williams's affidavit does not nullify any of the facts set out above, the evidence supporting them, or the construction of the applicable documents and regulations advanced herein. Thus it does not undermine the conclusion that Harris County's appeal seeking judicial review of HCAD's Appraisal Review Board's adverse ruling is without merit.
I can find no legal justification for the majority's holding in this important tax case of first impression, which undermines a recognized exemption from payment of ad valorem taxes granted to an authorized operator of an active FTZ as determined by CBP during the pendency of an administrative review proceeding. I would hold that CBP has the authority under the relevant *97 CFRs to grant authorization for the interim operation of an activated FTZ or Subzone during the period in which an adverse ruling on the activation of a new operator is under review prior to CBP's final ruling. I would further hold that that authority was properly exercised in this case to permit the interim operation of Subzone 84-N between August 29, 2006, and the formal deactivation of the subzone in August 2013, and that all requirements of the CFRs, the FTZ Manual, and the 2005 Grantee/Zone-Operator Agreement were complied with. Therefore, PRSI(CT) was properly exempted from ad valorem taxes on the merchandize held in Subzone 84-N during that period.
Conclusion
I would overrule Harris County's issue, and I would affirm the trial court's order granting summary judgment to PRSI and HCAD and denying Harris County's motion for summary judgment.

As stated in its foreword, "The purpose of the [FTZ Manual] is to place in one document, the various laws, regulations, policies and procedures that Customs and Border Protection personnel, grantees, operators and users need to know in the daily operation of Foreign Trade Zones." FTZ Manual at 2.

See Tex. Tax Code Ann . § 42.031 (West 2014).

A "grantee" is a public or private corporation to which the privilege of establishing, operating, or maintaining a zone project has been given. See FTZ Manual , section 2.3(a). Here, the grantee is the Port of Houston Authority

The "Port Director" is the director of the port of entry in which an FTZ is located. Here, the FTZ Administrator is the Port of Houston Authority. 19 C.F.R. § 146.1(b).

An "operator" is a corporation, partnership, or person that operates a FTZ or FTZ subzone under the terms of an agreement with the grantee. 19 C.F.R. § 146.1(b).

See 19 C.F.R. § 146.1(b) (" 'Deactivation' means voluntary discontinuation of the activation of an entire zone or subzone by the grantee or operator.").